May it please the Court, Robert Weber for Appellant Patricia Reams. This is on an appeal from a denial of Social Security disability benefits. We are alleging basically three errors. The ALJ erred in failing to consider or applying Social Security Regulation 99-2. That he erred in rejecting the treating physician's opinion in terms of Mrs. Reams disability and her conditions. And that the ALJ erred in finding Mrs. Reams not credible. In terms of Social Security Ruling 99-2, that was a ruling that became effective on April 30th, 1999. It dealt with the evaluation of chronic fatigue syndrome. The hearing in this matter was held on the 1st of September of 1999. The decision was October 27th. Clearly that regulation or ruling applied. It dealt specifically with the nature of this particular case. It was never mentioned and the criteria was never discussed by the ALJ. In fact, the criteria as set out in SSR 99.2 is listed in a medical report at the excerpt of record 87 and 88 indicating that the criteria in fact existed which the ALJ never addressed. In terms of the rejection of the treating physician's opinion, there are three physicians in this case that really discussed what happened. There was Dr. Anderson, the treating physician who treated Mrs. Reams for five plus years prior to this decision. There was Dr. Freidinger who was a consultative exam who saw the claimant on one occasion for half an hour, the examiner for ten minutes. There was a review by a physician for DDS which I think if you look at this exhibit or it's at page 38A of the excerpt of record, it is simply just a little comment by Dr. Jensen. You've got a treating physician, Dr. Anderson, right? We do. What does Dr. Anderson say? Dr. Anderson says Mrs. Reams is totally disabled. The ALJ says the opinion of a treating physician such as Dr. Anderson is entitled to deference and may be entitled to controlling weight, correct? So the ALJ understands that. I Then the ALJ dismissed the opinion of Dr. Anderson and gives us pages of reasons why. Why don't those reasons hold up from our standpoint as a reviewing court? Okay. The ALJ accurately set out the findings of these doctors and then if you look at the record he turned around and misstated them. Example, Dr. Freidinger, this is on the excerpt of record 219 that the ALJ indicated that Dr. Freidinger said, quote, I tend to doubt both of these diagnoses, meaning the chronic fatigue syndrome and the fibromyalgia. That's what the doctor said. Then what the ALJ said when he was writing his opinion as to what Dr. Freidinger said, this is on excerpt of record at 222, he said Dr. Freidinger explicitly stated chronic fatigue syndrome was not present. Now I think if you look at what the ALJ said, explicitly stated was not present versus I tend to doubt, I think that's a misstatement of what Dr. Freidinger did say. Where's the misstatement again? I've got the first part, I would tend to doubt, but where's the ALJ? Okay, on excerpt of record 222, he's discussing Dr. Freidinger and he states that Dr. Freidinger explicitly stated chronic fatigue syndrome was not present, which I would say to me is certainly a misstatement of what Dr. Freidinger said. Where on that page is that 222? It's the second full paragraph up from the bottom, the last sentence. On page 222? 222. That's the problem. I don't have 222. That does create a problem. I'll check it out. But he said Dr. Freidinger explicitly stated CFS was not present. And additionally, I don't know if counsel will agree, but the ALJ talks about a Dr. Johnson on a couple of occasions. I think he meant to say Dr. Jensen, because I know of no Dr. Johnson and there is a Dr. Jensen. But in looking at Dr. Jensen, this is the department's reviewer. Basically what Dr. Jensen said was that no such diagnosis was warranted. That's not what she said. And then again on the excerpt of record 222, right after the comment about Dr. Freidinger, he characterizes Dr. Jensen's conclusions as the Dr. Johnson, we think Jensen, concluded that no such diagnosis was warranted. That's not what she said. It's another misstatement. So we have basically that the ALJ is, I don't know if he forgot what, but he's not characterizing these accurately. Again, he also, in talking about the credibility of the claimant, he says her activity level was higher than it should have been. But I think if you look, the telling item here is the ALJ looked at, in the excerpt of record 62, there was a log that set out what the ALJ looked at that log and said she did a lot of recreational activities. But if you look at the log, that's a total mischaracterization of the log because the log shows throughout that there's a massive amount of periods where she's fatigued, periods where she's sleeping, exhausted. I mean, it's listing all these other things that the ALJ simply ignored. There's a part of the record that caught my eye, and I suppose one might characterize that part of the record as tending to suggest that your client was not forthcoming with respect to her performance of some of these tests. Dr. Friedinger stated that her knee strength is virtually nil when tested and lying on her back. But then she weighs 280 pounds, and even though her knees don't work when she's lying down and he's testing her, then she can lift her body up and stand up. So the conclusion that I tend to draw from that was that she was faking her knee strength when she was being tested. Am I missing something there? Well, I think that that's one inference, but I think if you look back at the earlier part of Dr. Friedinger's statement, he thought that she was forthcoming and being straight with it. If she has no knee strength, how can she stand up at 282 pounds? I agree those two concepts would be a little inconsistent. But I would point out that weakness is part of the recognized findings for chronic fatigue syndrome. The ALJ was correct, though, wouldn't you say, in pointing out that the treating physician had one version of her limitations? That is, she wasn't able to perform certain activities for, what, an hour and a half or something like that? Very limited periods of time, yes, Your Honor. And that is contradicted by her testimony as to what her daily activities were. And so don't we have a disconnect between the data, if you will, or the conclusions of the treating physician compared to the plaintiff's testimony as to her activity? She testified to activities that her treating physician says she can't do. I don't think she ever did. I think she talked about she did things during the day. I don't think she ever talked about I do something in a block of time of four hours or I can do this or that. Everything is, she's talking about what she does throughout a day and that's How long did it take her to drive a car from Oregon to Utah? I don't know that that was related. I know it takes a long time having done it. She did that? Well, she went to Utah, yes. Says here she drove a car to Utah. Is that wrong? I think she had quit driving altogether. I don't think she drove at all, so I don't know. I think the testimony was, and the history is, that she had quit driving because of her condition. All right, let's hear from the other side. Counselor, thank you very much. Good morning, Your Honors. David Johnson representing the Commissioner of Social Security. It is in the record that Ms. Reams testified that she can't do anything for two to three days after riding with her husband in the car for a few hours, and yet every two to three months she flies to Southern California, Fontana, California, for visits with her physician. There's no evidence in the record that she has to rest after driving to the airport. She has to rest after the flight. She has to rest after the drive to the doctor's office. None of that. That's definitely a contradiction. What about counsel's allegation that the ALJ misrepresented the state of the testimony by translating, I tend to doubt both of these diagnoses, into utterly rejecting the idea? I think that's a reflection of Dr. Frittinger's reluctance to be blunt with his statements. As Your Honor noted, Dr. Frittinger noted that the discrepant knee strength findings didn't come out and say she's faking her knee strength, but that's apparent to any reader. He says, I tend to doubt both of the diagnoses, and the ALJ translated that after reading Dr. Frittinger's report, and knowing something more about the entire record than Dr. Frittinger knew, into what Dr. Frittinger really means is these diagnoses don't exist. However, the ALJ also gave Ms. Reams the benefit of the doubt, and he said, her fibromyalgia I'll accept as a severe impairment, and regardless of whether or not chronic fatigue syndrome is a severe impairment, I'll include all the limitations that are evidenced in the record in the residual functional capacity finding, and that's what the regulations require. The ALJ gave good reasons for the weight he gave to Dr. Anderson's opinion. He accepted Dr. Anderson's diagnosis of fibromyalgia, and the diagnosis is based on subjective complaints, but then the ALJ's job is to assess the limitations that actually are likely to exist based on the record as a whole. Dr. Anderson just took Ms. Reams' subjective complaints and wrote those in his records and said she's disabled. We know that disability is a term of art. It involves both a medical and vocational component, and it's not up to the doctor to give a conclusive opinion as to what is disability in the meaning of the Social Security regulations. The ALJ noted that Dr. Anderson's opinion of disability were contrary to her activities, Ms. Reams' activities. It was contrary to the opinions of Dr. Frittinger and Dr. Jensen, and again, that it was reserved to the commissioner. The credibility finding is supported by substantial evidence, both the activities, the contradictions between her activities that she claims in different contexts, telling Dr. Anderson that she is as limited as she is, and yet demonstrating that she can do more than she testified to or told Dr. Anderson about. Additionally, she claimed at the ALJ that in a questionnaire filled out at ER 124 that her day, unless she has to go somewhere, is either in bed or on the couch, and that's different than what she testified to, the activities of going to church, crocheting, volunteering, traveling, using the Internet, painting, sewing, organizing a political women's group, and her testimony that after a little while, maybe a couple hours at an activity, she needs to switch activities was part of her testimony. Later in her testimony, it was that she needs to rest a while. Additionally, the ALJ noted in the credibility finding the discrepancy in the exertional testing, the lack of support for that from Dr. Torres' opinion or examination, and that the lack of atrophy, that if someone is actually either in bed or on the couch for most of their lives, they're going to have muscle atrophy, and that was not found in the medical reports. So the ALJ's decision is based on substantial evidence and should be upheld. Thank you, Counsel. We'll give you a minute to respond. Just a couple things, Your Honors. As Counsel indicated, the ALJ did accept that Ms. Reams had fibromyalgia, rejected the chronic fatigue. However, Dr. Anderson did not in any way limit the limitations to chronic fatigue. He set out these limitations indicating they were for both conditions. There's no distinction as between the two, and none of the other doctors in this case set any limitations or any capabilities. They simply said, we doubt the diagnosis, end of discussion. They didn't say she could do light work, that she could do sedentary work, that she could do any work. They didn't ever address that. So I don't see how that can be supportive of the ALJ's residual physical capacity finding. Do you accept Counsel's explanation for the I tend to discount, that the ALJ took a look at all the information and translated into discounted completely? I mean, I understand his position, and I would agree that you could make that argument. I don't think it's supported by this record. The other thing is that in the credibility issue, the ALJ seemed to go both ways. He said, gee, Dr. Freidinger didn't find muscle atrophy, so this lady couldn't be in bed all the time. Then he turns right around and says that he's finding her non-credible because she does so much activities. Well, you can't find her non-credible for not having muscle activity when you find her credible in terms of all the activities she did. So I don't see where that supports his theory. Thank you, Counsel. The case just argued is ordered and submitted. We appreciate your help. We'll call the next case, Jorge Luna Trujillo v. John Ashcroft. Page PAGE of NUMPAGES www.verbalink.com
judges: Leavy, Trott, Pollak